```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__9/17/14__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DAGOBERTO CABRAL,                                           :
                                        Plaintiff,          :
                                                            :          12 Civ. 4659 (LGS)
                     -against-                               :
                                                            :          OPINION AND ORDER
CITY OF NEW YORK, et al.,                                   :
                                        Defendants.         :
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Dagoberto Cabral brings this action pursuant to 42 U.S.C. § 1983 against

Defendants City of New York, New York City Police Department, Detective Tyrone Thompson

and two John Does.  The action arises from the arrest of and subsequent criminal proceedings

against Plaintiff, who alleges violations of the Fourth and Fourteenth Amendments and New

York law.  Defendants move for partial summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure and for dismissal pursuant to Rule 12(c), and Plaintiff cross-moves for

partial summary judgment pursuant to Rule 56.  For the reasons stated below, Defendants'

motion is granted in part and denied in part, and Plaintiff's motion is likewise granted in part and

denied in part.

**BACKGROUND**

        The following facts are taken from Defendants' Rule 56.1 Statement, Plaintiff's Counter-

Statement, Plaintiff's own Rule 56.1 Statement and exhibits accompanying the submissions.  As

is required on a motion for summary judgment, the facts are construed in the light most favorable

to the nonmoving party.

        On June 24, 2011, at around 6:45 p.m., Plaintiff was sitting with another person in his

Dodge minivan parked near 945 St. Nicholas Avenue in New York City when a third person,

Billy Epps, approached and entered it.  Around the same time, Defendant Thompson was part of a police team executing a search warrant at a nearby apartment.  Defendant Thompson stated that he did not know what contraband the police were looking for at the apartment or what contraband, if any, was recovered (guns were a "possibility," as were narcotics) because he did not stay for the search warrant to be fully executed.  Instead, he went to the front of the apartment building, where he received a phone call from a confidential informant.  The informant told him that a person "involved with" the apartment was entering a van parked on St. Nicholas Avenue.  The informant described that person as a dark-skinned black male.  Plaintiff disputes that the call between Defendant Thompson and the informant ever occurred.

Defendant Thompson and another police officer then approached Plaintiff's minivan; Thompson had his gun drawn.  When Defendant Thompson approached, he saw a black male seated in the rear of the vehicle and two Hispanic males seated in the front.  By his own account, Defendant Thompson knew as he moved toward the vehicle that the individual seated in the rear, and not Plaintiff who was seated in the front, was the person described by the informant.  Also by his own account, Defendant Thompson did not believe that the individual seated in the rear was involved in illegal activity at that time.  Defendant Thompson and the other officer ordered all occupants to exit the minivan, handcuffed them and placed them "[c]urbside."  Defendant Thompson returned to the minivan, purportedly smelled marijuana, opened the compartments on the minivan floor, and discovered money in a book bag and what he believed from his training and experience was marijuana in a sealed glass jar inside a zip-lock bag.  According to Defendant Thompson, after discovering the marijuana and the cash, he called his supervisor, who then sent additional officers to the scene.  According to Plaintiff, the officers called for and received backup before Defendant Thompson began "[g]oing through everything."  Plaintiff acknowledges

that the marijuana belonged to him and claims that the book bag contained about $20,000. Plaintiff was arrested for the unlawful possession of marijuana and strip searched. The marijuana, the minivan and $8,800 in cash were vouchered.

The day after Plaintiff's arrest, Defendant Thompson swore to an affidavit to obtain a warrant to search Plaintiff's minivan, stating that "there is reasonable cause to believe that evidence of the sale and possession of marijuana, and conspiracy to commit those crimes, will be found, inside the target vehicle . . . ." On July 21, 2011, Defendant Thompson swore to another affidavit stating that Plaintiff was in possession of marijuana on June 24, 2011, whereupon Plaintiff was criminally charged with the unlawful possession of marijuana. The assistant district attorney assigned to Plaintiff's case did not speak with Defendant Thompson about the offenses with which Plaintiff was charged.

On June 29, 2011, Plaintiff signed a receipt indicating that a number of items, including $8,800 in cash, were returned to him. Plaintiff claims that he did not actually receive the $8,800 until February 2012, and that an additional $12,200 remains unreturned. Plaintiff, through his attorney, continued to seek the return of his property in August and September 2011.

The assistant district attorney assigned to prosecute Plaintiff did not prepare any witnesses before November 10, 2011, the scheduled date for Plaintiff's suppression hearing. The criminal case against Plaintiff was dismissed on November 10, 2011, on speedy trial grounds.

Plaintiff commenced the instant action on June 14, 2012. On consent of the parties, the Court stayed discovery on Plaintiff's *Monell* claims (i.e., failure to train and failure to supervise). On October 10, 2013, Defendants filed a motion for partial summary judgment and judgment on the pleadings as to the *Monell* claims. On November 1, 2013, Plaintiff filed a cross-motion for partial summary judgment.

## STANDARD

A court reviews motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure under the same standard as motions to dismiss pursuant to Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the nonmoving party. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 846 (2013) (quoting *Twombly*, 550 U.S. at 555).

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008). A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the nonmoving party. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178-79 (2d

4

Cir. 2008).  Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## DISCUSSION

The Complaint's statement of claims asserts thirteen causes of action: (i) false arrest, (ii) unlawful detention and confinement, (iii) failure to train and (iv) failure to supervise in violation of the Fourth and Fourteenth Amendments; and (v) false arrest, (vi) assault, (vii) battery, (viii) malicious prosecution, (ix) abuse of process, (x) negligence, (xi) intentional infliction of emotional distress, (xii) negligent infliction of emotional distress and (xiii) prima facie tort in violation of New York law.  Plaintiff states in his motion papers that the Complaint contains five additional § 1983 claims: (i) the unlawful search of Plaintiff's vehicle at the scene of his arrest, (ii) the unlawful strip search of Plaintiff, (iii) malicious prosecution, (iv) the unlawful seizure of the vehicle and (v) the unlawful seizure of Plaintiff's U.S. currency.[1] Defendants move for judgment on the pleadings on Plaintiff's two *Monell* claims and for summary judgment on all remaining claims except for the § 1983 unlawful vehicle search claim. Plaintiff likewise moves for summary judgment on all of his § 1983 claims except the § 1983 unlawful vehicle search claim.

As a preliminary matter, Defendants New York City Police Department, John Doe No. 1 and John Doe No. 2 are dismissed.  The New York City Police Department is not a suable entity,

---

[1] In general, "it is inappropriate to consider claims not pleaded in the complaint in opposition to summary judgment."  *Scott v. City of New York Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009) *aff'd sub nom. Scott v. New York City Dep't of Corr.*, 445 F. App'x 389 (2d Cir. 2011) (quoting *Alali v. DeBara*, 2008 WL 4700431, at *3 n.6 (S.D.N.Y. Oct. 24, 2008) and collecting cases).  Nevertheless, for purposes of completeness, the allegedly implicit § 1983 claims are addressed below.

*Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007), and Plaintiff has failed to identify the two unnamed Defendants even after having had the full opportunity to conduct discovery, *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (collecting cases).

## I.       False Arrest, Detention & Confinement (Counts I, II & V)

All parties move for summary judgment on Plaintiff's false arrest, detention and confinement claims.  Summary judgment is granted for Plaintiff with respect to his detention prior to Defendant Thompson's discovery of marijuana, and for Defendants with respect to Plaintiff's detention thereafter.

### A.       Plaintiff's Detention Before the Discovery of Marijuana

Defendant Thompson's conduct in handcuffing and detaining Plaintiff before discovering marijuana violated the Fourth and Fourteenth Amendments and is not entitled to qualified immunity.

In the absence of probable cause to arrest, "*Terry v. Ohio*[, 392 U.S. 1 (1968),] and *Michigan v. Summers*[, 452 U.S. 692 (1981),] provide distinct standards for reasonable stops . . . ."  *United States v. Bailey*, 743 F.3d 322, 334 (2d Cir. 2014) ("*Bailey V*").  A *Terry* stop "require[s] reasonable suspicion of criminal conduct beyond proximity to a location of suspected crime," and a *Summers* detention "require[s] spatial proximity to the premises to be searched without regard to reasonable suspicion."  *Id.*

#### 1.       *Terry* Analysis

A *Terry* stop is justified if an officer "reasonably suspects that the person apprehended is committing or has committed a criminal offense."  *Arizona v. Johnson*, 555 U.S. 323, 326 (2009).  Reasonable suspicion requires more than a "hunch."  *Terry*, 392 U.S. at 27.  It demands "specific

6

and articulable facts which, taken together with rational inferences from those facts," *id.* at 21,

provide detaining officers with a "particularized and objective basis for suspecting wrongdoing,"

*United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted).

Even viewing the record in the light most favorable to Defendants, there could not have

been the reasonable suspicion necessary to stop Plaintiff pursuant to *Terry* in the first instance.

First, when Plaintiff was initially detained, the only fact connecting him to any possible criminal

activity was that Epps, the person associated with the apartment being searched, had just entered

the minivan in which Plaintiff was sitting.  However, Defendant Thompson admitted that he

knew, upon approaching the vehicle, that the individual seated in the back was the person

connected to the apartment being searched, and therefore that Plaintiff was not that person.

Defendant Thompson also admitted that he did not believe that Epps was involved in illegal

activity at the time.  In light of these admissions, any nexus between Plaintiff and Epps was

insufficient to permit Defendant Thompson to order Plaintiff out of a parked vehicle at gunpoint

and immediately handcuff him.  Although "[t]he [reasonable suspicion] standard is not high,"

*Bailey V*, 743 F.3d at 332 (internal quotation marks omitted), it is not satisfied on these facts, and

Plaintiff's detention cannot be justified by *Terry*.[2]

### 2.     *Summers* Analysis

Under *Summers*, a detention incident to search is constitutional only if "limit[ed] . . . to

the area in which an occupant poses a real threat to the safe and efficient execution of a search

warrant."  *Bailey v. United States*, 133 S. Ct. 1031, 1042 (2013) ("*Bailey IV*").  In determining

whether an occupant was lawfully detained within such "immediate vicinity" of the premises to

be searched, courts may consider "the lawful limits of the premises, whether the occupant was

---

[2] Defendants do not argue otherwise or advance *Terry* as a basis for the constitutionality of
Plaintiff's initial detention.

within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other

relevant factors." *Id.*  Here, nothing in the record suggests – and Defendants do not claim – that

Plaintiff was an occupant of the searched apartment at any relevant time, had any intention of

entering it or otherwise had any connection to it.[3]  Moreover, Plaintiff was inside a vehicle that

was "[a]round the block" from the apartment according to Defendant Thompson, not within the

line of sight, and access to the apartment presumably would have required passage through at

least one if not two doors.  These facts are far from satisfying the *Summers* standard, and could

not have justified Plaintiff's initial detention as effected incident to the search of the apartment.

### 3.    Qualified Immunity

Qualified immunity is an affirmative defense for which defendants have the burden of

proof.  *See Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).  An official sued under

§ 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or

constitutional right that was clearly established at the time of the challenged conduct.  *See*

*Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2080 (2011).  A defendant cannot be said to have violated a

clearly established right unless the right's contours were sufficiently definite for any reasonable

official in the defendant's shoes to understand that he was violating it.  *Id.* at 2083-84.  "In other

words, existing precedent must have placed the statutory or constitutional question confronted by

the official beyond debate."  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (internal

quotation marks omitted).  "[T]he salient question . . . is whether the state of the law at the time

of an incident provided fair warning to the defendants that their alleged [conduct] was

---

[3]  In successfully opposing Plaintiff's request for Defendants to produce documents relating to
the search of the apartment connected to Epps, defense counsel represented to the Court in a letter
dated April 26, 2013, that the apartment search warrant was "unrelated to the facts of the instant
case" and "irrelevant," and that Defendants "do not claim that [P]laintiff was associated with that
apartment in any way."

unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (alterations in original) (internal quotation marks omitted). The "dispositive inquiry . . . is whether it would [have been] clear to a reasonable officer in the agents' position that [their] conduct was unlawful in the situation [they] confronted." *Wood v. Moss*, 134 S. Ct. 2056, 2059 (2014) (alterations in original) (internal quotation marks omitted). "[I]f . . . officers of reasonable competence could disagree . . . , immunity should be recognized." *Hope v. Pelzer*, 536 U.S. 730, 752 (2002) (internal quotation marks omitted). Whether a clearly established right existed must be considered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal quotation marks omitted).

Qualified immunity does not save Defendant Thompson from liability for Plaintiff's unlawful initial detention. First, as discussed above, the record contains no evidence tending to show that Defendant Thompson had any individualized suspicion about Plaintiff, whether reasonable or unreasonable. Thus, there is no factual basis upon which to base a finding of qualified immunity for Defendant Thompson under *Terry*.

Second, with respect to *Summers*, the relevant Supreme Court jurisprudence is grounded in the premise that those who may be subject to detentions incident to search are *occupants* of the searched premises. 452 U.S. at 701-05. This occupancy nexus is relevant to each of the three law enforcement interests underpinning the *Summers* detention: (1) "minimizing the risk of harm to the officers" conducting the search, *id.* at 702; (2) "the orderly completion of the search," which "may be facilitated if the occupants of the premises are present," *id.* at 703; and (3) "preventing flight in the event that incriminating evidence is found," *id.* at 702; *see also Bailey IV*, 133 S. Ct. at 1038-1041 (elaborating on the three law enforcement interests underpinning a *Summers* detention). The Supreme Court has never departed from the occupancy requirement,

9

including in its two cases revisiting *Summers* that had been decided at the time of Plaintiff's 2011

detention.  *See Los Angeles Cnty. v. Rettele*, 550 U.S. 609 (2007) (finding that the detention of

individuals found on the premises at the time of the search was constitutional pursuant to

*Summers*); *Muehler v. Mena*, 544 U.S. 93 (2005) (same).  Although some courts have found

constitutional the detention of individuals who were leaving the premises to be searched, each

case involved someone who had just occupied the premises when the officers arrived to execute a

search.  *See Summers*, 452 U.S. at 693 & n.1 (upholding the detention of an individual as he

exited the front door of the premises and descended the porch steps); *see also United States v.*

*Fullwood*, 86 F.3d 27, 29-30 (2d Cir. 1996) (upholding the detention of an individual found

outside the premises and about to enter his vehicle); *United States v. Bailey*, 468 F. Supp. 2d 373,

376 (E.D.N.Y. 2006) ("*Bailey I*") (upholding the detention of two individuals after they exited the

relevant premises and drove for one mile), *aff'd*, No. 06 Cr. 232, 2010 WL 277069 (E.D.N.Y.

Jan. 19, 2010) ("*Bailey II*"), *aff'd*, 652 F.3d 197 (2d Cir. 2011), *rev'd*, 133 S. Ct. 1031, *aff'd*, 743

F.3d 322 (2d Cir. 2014).  Even in *Bailey*, the case most heavily relied upon by Defendants on the

qualified immunity issue,[4] the district court stated that officers needed at minimum a "reasonable

basis to believe that the person [to be detained] has just left or is about to enter the location to be

searched."  *Bailey II*, 2010 WL 277069, at *14.  Thus, in 2011, at the time of Plaintiff's detention,

the occupancy nexus was a clearly established prerequisite to the invocation of *Summers*.

      Here, as discussed above, no evidence suggests that Defendant Thompson believed or had

grounds to believe that Plaintiff had any connection to the apartment that was being searched, let

---

[4] As Defendants note, the Supreme Court later reversed the district court's rulings in *Bailey I* and
*Bailey II* (and the Second Circuit's affirmation thereof) on the ground that the applicability of
*Summers* was limited to the "immediate vicinity" of the premises to be searched and that the
detention in question, effected one mile away, was unjustified pursuant to *Summers*.  *Bailey IV*,
133 S. Ct. at 1041.  At the time of the 2011 incident in question, however, *Bailey I* and *Bailey II*
were good law.

alone that Plaintiff had occupied or intended to occupy the apartment.  In light of the clearly established requirement that detentions made pursuant to *Summers* be limited to the occupants of the premises to be searched, no reasonable officer could have believed that the detention of Plaintiff as he sat in a parked vehicle on another block was justified by *Summers*.  Consequently, Defendant Thompson is not entitled to qualified immunity under the *Summers* theory.

To the extent that Defendants could argue that Plaintiff's initial detention was a reasonably necessary step to detaining Epps pursuant to *Summers* or *Terry*, that argument would fail.  Even assuming that Defendant Thompson is entitled to qualified immunity for the detention of Epps, that does not by itself justify the detention of Plaintiff.  In *United States v. Di Re*, police arrested all three occupants of a car when a police informant in the backseat told the officers that the driver had sold him counterfeit coupons but said nothing about the passenger seated next to the driver.  332 U.S. 581, 583 (1948).  The Supreme Court ruled that the passenger's arrest violated the Fourth Amendment because "[a]ny inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person."  *Id.* at 594; *see also Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").  *Cf. Maryland v. Pringle*, 540 U.S. 366, 374 (2003) (finding that police had probable cause to arrest Pringle and two other occupants of a car because "[n]o such singling out occurred in this case").  Likewise here, the confidential informant had singled out Epps alone, and Defendant Thompson had no information about Plaintiff except that he was with Epps in the car.  Because it would have been clear to a reasonable officer in Defendant Thompson's position that "merely . . . sitting in the suspect's vehicle when officers approached," *United States v. Delossantos*, 536 F.3d 155, 160 (2d Cir. 2008), "do[es] not, without more, amount to probable

cause," *id.* at n.4, Defendant Thompson is not entitled to qualified immunity for Plaintiff's initial detention, even assuming he would be entitled to qualified immunity for Epps's detention.[5]

In light of the foregoing, summary judgment is granted in favor of Plaintiff for his unlawful detention before Defendant Thompson's discovery of marijuana.

### B.    Plaintiff's Detention After the Discovery of Marijuana

Plaintiff's claims for false arrest and unlawful detention and confinement (Counts I, II, V) must be analyzed separately for the period after the officers discovered marijuana in Plaintiff's vehicle.  Because probable cause existed for the arrest, summary judgment is granted to Defendants on Counts I, II and V for the period after the discovery.

"'In analyzing § 1983 claims for unconstitutional false arrest, [courts generally look] to the law of the state in which the arrest occurred.'"  *Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)).  In order to state a claim for false arrest or imprisonment under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified.  *See Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991).  Under New York law, "the existence of probable cause is an absolute defense to a false arrest claim."  *Jaegly*, 439 F.3d at 152.

"'Probable cause to arrest exists when the arresting officer has knowledge or reasonably

---

[5] On the record, it appears unlikely that Defendant Thompson would be entitled to qualified immunity for Epps's detention either.  Defendant Thompson's actions were based solely on the informant's assertion that Epps was "involved with" – not the "occupant of," or even "leaving or entering" – the apartment being searched.  Further, Defendant Thompson did not know what contraband the police were looking for in the apartment to form any kind of individualized suspicion about Epps because of his "involvement" with the apartment.  Indeed, Defendant Thompson admits that he did not believe Epps was involved in any criminal activity when he approached the car.

trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). "The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Jaegly*, 439 F.3d at 153).

There is no dispute that Defendant Thompson ordered Plaintiff and two other individuals out of Plaintiff's vehicle, in which Defendant Thompson then discovered marijuana. That fact alone provides probable cause for Plaintiff's arrest. *See Abreu v. Romero*, 466 F. App'x 24, 26 (2d Cir. 2012) (finding, in a New York case, that probable cause to arrest existed after officers found two ounces of marijuana in the plaintiff's bedroom).

Plaintiff argues that the charge for which he was arrested – unlawful possession of marijuana in violation of New York Penal Law 221.05 – does not authorize law enforcement officers to effect custodial arrests. With respect to the § 1983 false arrest claim, the Supreme Court in *Virginia v. Moore*, 553 U.S. 164 (2008), rejected the same argument. In that case, the appellant argued that he was unlawfully arrested for the misdemeanor of driving on a suspended license because state law did not authorize the arrest. *Id.* at 167. The Supreme Court found that the arrest was made with probable cause and did not violate the Fourth Amendment, even if the arrest was impermissible under state law. *Id.* at 178. The Court held that "state restrictions do not alter the Fourth Amendment's protections," and that to hold otherwise would cause the Fourth Amendment to "vary from place to place and from time to time . . . ." *Id.* at 176 (internal quotation marks omitted). Moreover, contrary to Plaintiff's position, New York law authorizes

13

arrest for the unlawful possession of marijuana in violation of New York Penal Law 221.05.

Under New York Criminal Procedure Law § 140.10, "a police officer may arrest a person for: (a) [a]ny offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence." An "offense" under § 140.10 is defined by New York Penal Law § 10.00(1) as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law, local law or ordinance of a political subdivision of this state . . . ." New York Penal Law § 221.05, under which Plaintiff was charged, expressly provides for punishment by a fine. Plaintiff's invocation of New York Criminal Procedure Law § 150.75 – requiring that "an appearance ticket shall promptly be issued and served upon" arrestees in connection with § 221.05 – does not change the fact that the unlawful possession of marijuana in violation of § 221.05 is an arrestable offense. Consequently, Plaintiff's argument fails with respect to his false arrest claims under both federal and state laws.

Plaintiff asks that the Court decline to follow *Townes v. City of New York*, in which the Second Circuit held that "[v]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . ; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution" – i.e., that the "fruit of the poisonous tree" doctrine does not apply in § 1983 actions. 176 F.3d 138, 148 (2d Cir. 1999). *Townes* remains binding law in this circuit. Thus, even assuming that the search of the vehicle that led to the discovery of marijuana was illegal, Plaintiff cannot recover for his arrest on that ground because the arrest was made with probable cause.

## II.  Malicious Prosecution (Count VIII and Implicit Federal Claim)

All parties move for summary judgment on Plaintiff's malicious prosecution claims – the state law claim explicitly pleaded in Count VIII, and the § 1983 claim that Plaintiff argues he

implicitly pleaded.  Under New York law, the elements of a malicious prosecution claim are "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor."  *Rohman v. N.Y.C. Transit Auth.)*, 215 F.3d 208, 215 (2d Cir. 2000) (quoting *Posr*, 180 F.3d at 417).  Malicious prosecution claims under § 1983 require the additional element of "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Id.*  Here, there is no dispute that Defendant Thompson discovered marijuana in Plaintiff's vehicle and that Plaintiff acknowledged it belonged to him.  That discovery provides the requisite probable cause underlying the criminal prosecution of Plaintiff, defeating any malicious prosecution claim by Plaintiff against Defendants under state or federal law.  Defendants' motion for summary judgment on the malicious prosecution claims is granted, and Plaintiff's motion is denied.

### III.    Strip Search (Implicit Claim)

Plaintiff argues that the Complaint sufficiently pleaded a § 1983 strip search claim, and moves for summary judgment on it.  Defendants argue that the Complaint failed to plead such a claim.  Defendants' motion for summary judgment is granted because the Complaint did not give them fair notice of the claim.

In support of his contention that the strip search claim is well pleaded, Plaintiff points to a paragraph of the Complaint alleging that Plaintiff was "prosecuted for a crime although stopped and searched without legal cause or justification."  That allegation alone is too conclusory to sustain a claim, let alone one based specifically on an alleged strip search.  To the extent that the allegation refers to an act alleged elsewhere in the Complaint, the only reference to an alleged search is pleaded under the statement of claim for battery, in which the Complaint alleges that

"[i]n the course of the arrest, the individual defendants intentionally, harmfully and offensively touched the plaintiff when conducting a pat down search of the plaintiff."  The search described is materially different from the strip search referred to in Plaintiff's motion papers, which supposedly occurred during Plaintiff's detention at the precinct.

To the extent that Plaintiff may seek to replead the strip search claim pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, repleading would be futile as well as prejudicial to Defendants at this late stage.  *Krumme v. WestPoint Stevens Inc*., 143 F.3d 71, 88 (2d Cir. 1998) ("[A] proposed amendment . . . [is] especially prejudicial . . . [when] discovery had already been completed and [non-movant] had already filed a motion for summary judgment." (alterations in original) (internal quotation marks omitted)); *see also Wilcox v. Cornell Univ*., 868 F. Supp. 2d 186, 187 (S.D.N.Y. 2012) (collecting cases), *aff'd*, 11 Civ. 8606, 2012 WL 4903181 (S.D.N.Y. Oct. 10, 2012).  This is especially so where Plaintiff must have known about the substance of the claim he would seek to replead – i.e., that he was subjected to a strip search – even before discovery.

## IV.    Seizure of Property (Implicit Claim)

Plaintiff argues that the Complaint sufficiently pleaded a § 1983 unreasonable seizure of property claim, and all parties seek summary judgment on this claim.  Summary judgment is

granted in favor of Defendants.[6]

The undisputed evidence here demonstrates that the vehicle and the money were seized after Defendant Thompson found the marijuana in a compartment of the minivan, next to a bag containing the money.  As with Plaintiff's arrest, the discovery of marijuana provided the requisite probable cause for the seizure of the vehicle and the bag of cash.  *See Colorado v. Bannister*, 449 U.S. 1, 3 (1980) (holding that the warrantless seizure of property in a vehicle that officers had probable cause to believe was contraband was permissible).

Moreover, although uncontroverted evidence shows that neither the vehicle nor the cash was released until early 2012, more than two months after the criminal case against Plaintiff had been dismissed, this fact alone does not support a seizure of property claim.  "Where . . . an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure."  *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004); *accord United States v. Jakobetz*, 955 F.2d 786, 802 (2d Cir. 1992).  Nor is there a due process claim under the Fourteenth Amendment: "To prevail on [a Fourteenth Amendment due process] claim, the plaintiff must show that [he] 'possessed a protected liberty or property interest, and that he was deprived of that interest without due process.'"  *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001) (quoting *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998)).  Plaintiff's exhibits show that he made two requests for a hearing on the return of his property – one on August 30, 2011, and another less than two weeks later.  No reasonable juror could find, based on these facts alone and in light of the ultimate release of Plaintiff's property, that the deprivation of Plaintiff's

---

[6] To the extent that Plaintiff's claim of property seizure involves more than his minivan and the $8,800 that was vouchered at the police station, the claim is not supported by evidence in the record.

property interest in the vehicle and the cash was without due process.

## V.     Failure to Train & Supervise (Counts III & IV)

Because discovery was stayed on Plaintiff's § 1983 claims against the City, Defendants move for judgment on the pleadings pursuant to Rule 12(c) on those claims.  That motion is granted because the Complaint fails to allege sufficient claims against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

While a city may not be sued under § 1983 "for an injury inflicted solely by its employees or agents," it can be liable if the infliction on plaintiff of a constitutional injury was the result of a municipal "policy or custom."  *Id.* at 694.  A city "policy or custom" exists "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice' . . . ."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004).  A city's failure to train or supervise constitutes "deliberate indifference" when three requirements are met: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  *Jenkins*, 478 F.3d at 94 (internal quotation marks omitted) (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citation and internal quotation marks omitted); *see Chamberlain v. City of White Plains*, No. 12 Civ. 5142, 2013 WL 6477334, at *16-18 (S.D.N.Y. Dec. 10, 2013) (citing *Connick* to rule on a motion to dismiss a

failure to train claim).

The Complaint here contains no factual allegations that could support any of the three *Walker* factors.  The Complaint contains only conclusory statements about the "custom, practice or official policy" of the City and naked assertions about the City's failure to train and supervise.  Because the Complaint fails to plead adequately municipal liability under § 1983 pursuant to *Monell*, the City is dismissed as to all § 1983 claims.

## VI.   Assault & Battery (Counts VI & VII)

All parties move for summary judgment on Plaintiff's assault and battery claims under New York law.  Defendants' motion for summary judgment is granted on these claims.

"[E]xcept for § 1983's requirement that the tort be committed under color of state law," the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under § 1983 are the same.  *Posr*, 944 F.2d at 95.  "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Here, the only facts suggesting excessive force are the use of guns during the officers' approach and the handcuffing of Plaintiff, the latter of which Plaintiff said caused wrist pain.  Defendant Thompson's approach with his gun drawn does not constitute excessive force as a matter of law.  *See Mittelman v. Cnty. of Rockland*, No. 07 Civ. 6382, 2013 WL 1248623, at *13 (S.D.N.Y. Mar. 26, 2013) (finding "insufficient . . . Plaintiff's assertion that the officers pointed guns at him . . . [because a] threat of force does not constitute excessive force"); *Smith v. Fields*, No. 95 Civ. 8374, 2002 WL 342620, at *5 (S.D.N.Y. Mar. 4, 2002) (holding that the plaintiff's

allegation of being threatened at gunpoint could not support an excessive force claim); *Aderonmu v. Heavey*, No. 00 Civ. 9232, 2001 WL 77099, at *3 (S.D.N.Y. Jan. 26, 2001) (same).

With respect to the handcuffing, courts evaluating such claims have looked at three factors: (1) whether the handcuffs were unreasonably tight; (2) whether defendants ignored the plaintiff's plea that they were too tight; and (3) the degree of wrist injury. *See Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005); *accord Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013); *Matthews v. City of New York*, 889 F. Supp. 2d 418, 441 (E.D.N.Y. 2012); *Smith v. City of New York*, No. 04 Civ. 3286, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013). Here, Plaintiff presents no evidence that the handcuffs were unreasonably tight or that Plaintiff complained to Defendant Thompson that they were too tight. The sole evidence supporting the third prong – injury – is Plaintiff's own unsubstantiated statement that his wrist continues to "bother" him. Such unsubstantiated assertions, without more, are insufficient to support an excessive force claim involving handcuffing. *See, e.g.*, *Esmont*, 371 F. Supp. 2d at 215 (holding that "[u]nsubstantiated claims of nerve damage, in the absence of corroborating medical evidence, are insufficient to support a claim of excessive force from handcuffing" and collecting cases); *Matthews*, 889 F. Supp. 2d at 443 ("[I]n order to withstand summary judgment, [the plaintiffs] must provide medical evidence that the handcuffs caused serious, long-lasting, or persistent injury."); *Faruki v. City of New York*, No. 10 Civ. 9614, 2012 WL 1085533 (S.D.N.Y. Mar. 30, 2012), *aff'd*, 517 F. App'x 1 (2d Cir. 2013).

## VII.    Other Claims (Counts IX – XIII)

Plaintiff's remaining claims fail as a matter of law. With respect to abuse of process, Plaintiff has failed to adduce any evidence demonstrating that Defendants "(1) employ[ed]

regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 70 (2d Cir. 2003) (internal quotation marks omitted).

With respect to negligence, the Second Circuit has held that "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). To the extent that Plaintiff claims negligent hiring, training or supervision against the City, Plaintiff has adduced no evidence to show that Defendant Thompson acted outside the scope of his employment, a required element of such municipal negligence claims. *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013) (internal quotation marks omitted) ("To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment.").

With respect to the infliction of emotional distress claims, no reasonable juror could find that Defendants' actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Karl v. Asarco Inc*., 166 F.3d 1200 (2d Cir. 1998) (affirming the dismissal of a negligent infliction of emotional distress claim on the grounds that the alleged conduct did not rise to the "outrageous in character" standard); *see also Ashjari v. Nynex Corp.*, 182 F.3d 898 (2d Cir. 1999) (applying the same standard in the intentional infliction of emotional distress context).

Finally, there is no evidence to support Plaintiff's prima facie tort claim, which requires a showing of "disinterested malevolence" on the part of Defendants. *Twin Labs., Inc. v. Weider*

*Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990).

## CONCLUSION

For the reasons discussed above, Defendants' motion is GRANTED in part and DENIED in part, and Plaintiff's motion is GRANTED in part and DENIED in part as follows:

- False arrest, detention and confinement (Counts I, II & V) – Summary judgment is granted for Plaintiff against Defendant Thompson with respect to Plaintiff's detention prior to the discovery of marijuana, and for Defendants with respect to Plaintiff's detention thereafter;

- Malicious prosecution (Count III and implicit federal claim) – Defendants' motion for summary judgment is granted;

- Strip search (implicit claim) – Defendants' motion for summary judgment is granted;

- Seizure of property (implicit claim) – Defendants' motion for summary judgment is granted concerning Plaintiff's vehicle and the U.S. currency;

- Failure to train and supervise (Counts III and IV) – Defendants' motion for judgment on the pleadings is granted;

- Assault and battery (Counts VI and VII) – Defendants' motion for summary judgment is granted;

- Other claims (Counts IX to XIII) - Defendants' motion for summary judgment is granted.

A separate scheduling order will be issued for a conference to determine the trial date with

respect to damages on Plaintiff's wrongful detention claim and the merits of the remaining claim, which was not the subject of these motions, i.e., the § 1983 unlawful vehicle search claim against Defendant Thompson.  The Clerk is directed to close the motions at Docket Nos. 23 and 28.

       SO ORDERED.

Dated: September 17, 2014
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE