UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
: 
DAGOBERTO CABRAL,                                           :
                              Plaintiff,      :
                                                           :          12 Civ. 4659 (LGS)
              -against-                      :
                                                           :          OPINION & ORDER
CITY OF NEW YORK, et al.,                                   :
                              Defendants.    :
                                                           :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/11/15____

LORNA G. SCHOFIELD, District Judge:

Upon resolution of the parties' cross-motions for summary judgment, the following issues

remained for a jury: (1) the amount of damages Plaintiff Dagoberto Cabral was entitled to recover

for his unlawful arrest by Defendant Tyrone Thompson, a Detective with the New York City

Police Department ("NYPD"); and (2) whether Defendant Thompson unlawfully searched

Plaintiff's car, and if so, the amount of Plaintiff's damages.  After a two-day trial, on December

17, 2014, the jury (1) awarded Plaintiff $100 in compensatory damages for his unlawful arrest,

(2) concluded that Defendant Thompson had unlawfully searched Plaintiff's car and awarded

Plaintiff $1 in nominal damages, and (3) awarded Plaintiff $110,000 in punitive damages.

Defendant Thompson moves pursuant to Federal Rules of Civil Procedure 50 and 59 for a

judgment in his favor as a matter of law or, in the alternative, for a remittitur of the jury's

punitive damages award.  Plaintiff timely moved for attorneys' fees pursuant to 42 U.S.C. § 1988.

For the reasons below, Defendant's motion for judgment is denied, his motion for remittitur is

granted and Plaintiff's motion for attorneys' fees is granted in part and denied in part.

## I.      BACKGROUND

### A.      Summary Judgment

By Opinion and Order dated September 17, 2014 (the "SJ Opinion"), the Court resolved

the parties' cross-motions for summary judgment.  *Cabral v. City of New York*, No. 12 Civ. 4659,

2014 WL 4636433 (S.D.N.Y. Sept. 17, 2014) ("*Cabral I*").  Familiarity with the SJ Opinion and

the underlying issues is presumed and repeated here only to the extent necessary to resolve the

present motions.  The undisputed facts, based on the parties' depositions and other submissions,

established the following:

> On June 24, 2011, at around 6:45 p.m., Plaintiff was sitting with
> another person in his Dodge minivan parked near 945 St. Nicholas
> Avenue in New York City when a third person, Billy Epps,
> approached and entered it.   Around the same time, Defendant
> Thompson was part of a police team executing a search warrant at
> a nearby apartment.  Defendant Thompson stated that he did not
> know what contraband the police were looking for at the apartment
> or what contraband, if any, was recovered (guns were a
> "possibility," as were narcotics) because he did not stay for the
> search warrant to be fully executed.  Instead, he went to the front
> of the apartment building, where he received a phone call from a
> confidential informant.   The informant told him that a person
> "involved with" the apartment was entering a van parked on St.
> Nicholas Avenue. The informant described that person as a dark-
> skinned black male. . . .

> Defendant Thompson and another police officer then approached
> Plaintiff's minivan; Thompson had his gun drawn.   When
> Defendant Thompson approached, he saw a black male seated in
> the rear of the vehicle and two Hispanic males seated in the front.
> By his own account, Defendant Thompson knew as he moved
> toward the vehicle that the individual seated in the rear, and not
> Plaintiff who was seated in the front, was the person described by
> the informant.  Also by his own account, Defendant Thompson did
> not believe that the individual seated in the rear was involved in
> illegal activity at that time. Defendant Thompson and the other
> officer ordered all occupants to exit the minivan, handcuffed them
> and placed them "[c]urbside."   Defendant Thompson returned to
> the  minivan,  purportedly  smelled  marijuana,  opened  the
> compartments on the minivan floor, and discovered money in a

> book bag and what he believed from his training and experience
> was marijuana in a sealed glass jar inside a zip-lock bag.

*Cabral I*, 2014 WL 4636433, at *1.  In successfully opposing Plaintiff's request for Defendants

to produce documents relating to the search of the apartment tied to Epps, "defense counsel

represented to the Court . . . that the apartment search warrant was 'unrelated to the facts of the

instant case' and 'irrelevant,' and that Defendants 'do not claim that [P]laintiff was associated

with that apartment in any way.'" *Id.* at *4 n.3.

At his deposition, which was the basis for the summary judgment motions, Defendant

Thompson testified that prior to ordering Plaintiff and the other two occupants out of the car, he

saw "the suspect," Epps, sitting in the back of the car and did not believe that he was "involved

in illegal activity" at the time he approached the car with his gun drawn.  Based on this evidence

and the remaining record, the SJ Opinion concluded that Defendant Thompson had unlawfully

arrested Plaintiff in violation of the Fourth Amendment, and that the period of Plaintiff's false

arrest continued for several minutes until Defendant Thompson uncovered the marijuana in the

car.  *Id.* at *4.

The SJ Opinion also concluded that Defendant Thompson was not entitled to qualified

immunity for the unlawful arrest under any possible legal theory.  *Id.* at *5.  The SJ Opinion

stated, "In the absence of probable cause to arrest, *Terry v. Ohio*, 392 U.S. 1 (1968), and

*Michigan v. Summers*, 452 U.S. 692 (1981), provide distinct standards for reasonable stops." *Id.*

at *4 (internal quotation marks and alterations omitted).  The SJ Opinion held that "Plaintiff's

detention cannot be justified by *Terry*," and clarified that "Defendants do not argue otherwise or

advance *Terry* as a basis for the constitutionality of Plaintiff's initial detention."  *Id.* at *4, *4 n.2.

(Defense counsel did not raise *Terry* in their motion papers, but addressed it at the oral argument

at the Court's prior express invitation.)  The SJ Opinion also held that "[i]n light of the clearly

3

established requirement that detentions made pursuant to *Summers* be limited to the occupants of

the premises to be searched, no reasonable officer could have believed that the detention of

Plaintiff as he sat in a parked vehicle on another block was justified by *Summers*." *Id.* at *6.

      Plaintiff was granted summary judgment on his claim of unlawful arrest from the time he

was detained until Defendant Thompson's discovery of the marijuana. *Id.* at *12. Defendants

were granted summary judgment on the remaining claims -- (1) false arrest and detention after

Defendant Thompson's discovery of marijuana, (2) malicious prosecution, (3) unlawful strip

search, (4) unlawful seizure of property, (5) failure to train and supervise, (6) assault and battery,

(7) abuse of process, (8) negligence, (9) intentional infliction of emotional distress, (10)

negligent infliction of emotional distress and (11) prima facie tort. *Id.*

      Only two issues remained for trial: (1) Plaintiff's damages on Plaintiff's wrongful

detention claim against Defendant Thompson, and (2) the merits and possible damages on the

unlawful vehicle search claim against Defendant Thompson, which was not the subject of the

summary judgment motions.

      **B.**    **Trial**

      At trial, Defendant Thompson described the incident in more detail and sometimes

inconsistently as compared with his deposition testimony. He stated that his unit executes

warrants for contraband, specifically, "drugs, guns." He stated that on June 24, 2011, the date of

the incident, he helped "ram" open the door of *Epps'* apartment during the execution of such a

search warrant and then went outside for "crowd control." Defendant Thompson testified that

while he was outside the apartment building, his confidential informant ("CI") called: "He

advised me that . . . a male . . . [who] was involved with the sales of narcotics at that location that

we w[ere] executing the search warrant was now entering a van with two other guys that w[ere]

sitting in front, which was parked on a hydrant on St. Nicholas Avenue." The CI also told Defendant Thompson that the man seen entering the car "was selling drugs to my CI."

Defendant Thompson testified that when he approached the car with another police officer, he saw an individual in the back seat through the car's tinted windows. This "person[,] later to be identified as Billy Epps[,] lunge down." He explained that he and the other police officer approached the car with guns drawn "to cover a threat, a potential threat, due to the fact that a car is dangerous. It can be a safety situation." At defense counsel's prompting, Defendant Thompson explained that he drew his weapon after he saw Epps lunge because of "[f]ear of safety." Defendant Thompson "didn't know what possibly [Epps] was putting down at that area. Maybe it could be a firearm." During cross-examination, Defendant Thompson testified that his trial testimony differed from his deposition testimony because reviewing case notes before the trial had refreshed his memory. He also admitted that "none of [the] paperwork arising out of th[e] incident says that Billy Epps lunged."

At the close of Plaintiff's case, Defendant Thompson moved for a judgment in his favor under Federal Rule of Civil Procedure 50(a), and "preserv[ed]" a motion based on qualified immunity to be argued at the close of all evidence. The Rule 50(a) motion was denied. After the jury returned its verdict, Defendant renewed his Rule 50 motion as to the sufficiency of the evidence, renewed his application for qualified immunity, and argued that the amount of punitive damages should be reduced. The Court denied the rule 50(a) motion and reserved decision on qualified immunity and the amount of punitive damages. An order dated December 18, 2014, directed Defendant to file papers in support of his motions on qualified immunity and punitive damages.[1]

---

[1]        The December 18 Order invites further briefing on an already extant post-trial motion.

## II.     DISCUSSION

Defendant Thompson's motion for a judgment in his favor on the basis of qualified immunity is denied.  His motion in the alternative for a remittitur of the punitive damages award is granted, and the punitive damages award will be reduced from $110,000 to $10,000.  Finally, Plaintiff's application for attorneys' fees is granted in part; Plaintiff is entitled to $103,262.92 in attorneys' fees and expenses.

### A.     Rule 50 and Rule 59 Motions

Defendant Thompson's motions under Rules 50 and 59 are premised on the sufficiency of the evidence.  He argues that there was sufficient evidence at trial to establish his entitlement to the defense of qualified immunity as to the initial arrest and search of Plaintiff, a matter already resolved at summary judgment.  Defendant Thompson does not argue that he is entitled to qualified immunity for the search of Plaintiff's car.

Under Rule 50(a)(1)(B), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 50(a)(1)(B).  In reviewing a Rule 50 motion for judgment as a matter of law, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 153 (2d Cir. 2014) (emphases omitted).

---

However, Defendant's memorandum purports to bring a new motion.  A new motion would be untimely because any new motion under Rule 50(b) should have been filed within 28 days of the jury's discharge, a deadline that may not be extended.  *See* Fed. R. Civ. P. 50(b), 6(b)(2).  On the understanding that Defendant Thompson merely supplemented motions already made, and did not bring new motions, this Opinion resolves Defendant's motions on the merits.

Under Rule 59(e), which allows a district court "to alter or amend a judgment," courts "may alter or amend judgment to correct a clear error of law or prevent manifest injustice." *ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014).  In this District, the standard governing a motion under Rule 59(e) is the same as that under Local Civil Rule 6.3, which governs motions for reconsideration.  *See Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 124 (S.D.N.Y. 2015).  "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "Rule 59 is not a vehicle for . . . presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ."  *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

"Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Drimal v. Tai*, 786 F.3d 219, 224-25 (2d Cir. 2015) (intenal quotation marks omitted).  Courts "should charge the jury on [the substantive claims], but not on qualified immunity.  If the jury returns a verdict . . . against [the defendant], the court should then decide the issue of qualified immunity."  *Stephenson v. Doe*, 332 F.3d 68, 80 (2d Cir. 2003).

Here, the Court resolved the issue of qualified immunity as to the relevant claim -- Plaintiff's initial detention -- before trial.  Never having framed Plaintiff's initial detention as a *Terry* stop in his summary judgment motion papers, now after the jury's verdict, Defendant Thompson argues that based on the "more fully developed facts established at trial, the stop of [P]laintiff was a *Terry* stop, conducted solely for the officers' safety."  However, the "facts" Defendant Thompson describes as "more fully developed" at trial consist entirely of his

7

testimony, which differed in key respects from his deposition testimony -- the basis of the Court's prior ruling.  The doctrine of judicial estoppel prevents Defendant Thompson from relying on new facts to obtain a different legal outcome at this late stage.

"A potential consequence of a conflict between two factual statements made by the same party is judicial estoppel . . . ."  *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010). "Judicial estoppel is 'invoked by a court at its discretion,' and is designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"  *United States v. Apple, Inc.*, --- F.3d ----, No. 13-3741-CV, 2015 WL 3953243, at *40 (2d Cir. June 30, 2015) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).  "Courts may raise the issue of judicial estoppel sua sponte because judicial estoppel concerns the integrity of the judicial system independent of the interests of the parties . . . ."  *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 363 n.3 (S.D.N.Y. 2011) (internal quotation marks omitted), *aff'd*, 484 F. App'x 616 (2d Cir. 2012).

"Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel."  *In re Adelphia Recovery Trust*, 634 F.3d 678, 695-96 (2d Cir. 2011).  "Because the doctrine is primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (alteration omitted).

Here, each of the requirements of judicial estoppel is satisfied.  First, at trial, Defendant Thompson's testimony was "clearly inconsistent" with his deposition testimony that formed the

basis of the SJ Opinion.  At his deposition, Defendant Thompson did not know what the search warrant was for.  At trial, he did.  At his deposition, Defendant Thompson did not know anything about Epps other than that he was "involved" with the apartment being searched.  At trial, Defendant Thompson testified that Epps had sold his CI drugs in that apartment.  At his deposition, Defendant Thompson said he did not believe Epps was doing anything illegal when he approached the car with his gun drawn.  At trial, Defendant Thompson testified that he saw Epps "lunge" and only then drew his guns because he feared for his safety.

Second, in the SJ Opinion, Defendant Thompson's prior factual positions were adopted by the Court and formed the basis for the holding that Defendant Thompson had unconstitutionally detained Plaintiff before the marijuana was found.  Third, Defendant Thompson would receive an unfair advantage if his new set of facts were accepted over the previous record.  He would get two bites at the apple by changing his uncorroborated testimony -- first, about what a CI (unidentified throughout the proceedings because of security reasons) informed him, and second, about what he observed when he approached the vehicle.  His first version of undisputed facts resulted in a finding of liability for false arrest, a rejection of his qualified immunity defense, and a trial on damages.[2]  Now Defendant Thompson attempts to rely on a new version of the facts to avoid liability for false arrest and reform his qualified immunity defense.

At its core, judicial estoppel "seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions" and "protect judicial integrity by avoiding

---

[2]     *See* Order at Dkt. No. 35 (scheduling oral argument "to discuss . . . questions regarding the detention of Plaintiff <u>prior to Defendant Thompson's discovery of marijuana</u>," including "[i]n the context of qualified immunity, is there any controlling precedent existing at the time of the 2011 detention tending to support the constitutionality of the detention of someone in Plaintiff's position -- i.e., someone not reasonably believed to have been on the premises or to have had any known connection to it except for his presence in the same vehicle as a person tied to the premises? What is the basis, if any, for Defendant Thompson's qualified immunity for the detention of an individual in such circumstances?").

the risk of inconsistent results in two proceedings." *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993). To allow Defendant Thompson to advance his motion on the basis of a belated "clarification" of the record that amounts to wholesale revision would defeat both these long-recognized purposes. Accordingly, Defendant Thompson's renewed application for qualified immunity is denied. For the reasons fully stated in the SJ Opinion, Defendant Thompson is not entitled to qualified immunity for his initial detention of Plaintiff.

**B.      Remittitur of Punitive Damages**

Defendant Thompson does not contest that punitive damages are warranted; he argues only that the $110,000 punitive damages award is excessive and should be remitted.[3] He does not, however, suggest a remittitur amount. For the reasons below, the punitive damages amount is remitted to $10,000. If Plaintiff refuses this amount, a new trial will be held as to punitive damages.

"Remittiturs are a common procedure used by the courts to, in effect, reduce the amount of a damage award that the court concludes is impermissibly high." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 167 (2d Cir. 2014).

> *Remittitur* is defined as the process by which a court compels a plaintiff to choose between the reduction of an excessive verdict and a new trial. If the plaintiff rejects the specified reduction in the amount of damages, the court must grant a new trial to avoid depriving the plaintiff of the Seventh Amendment right to a jury trial; the court does not have the option of entering judgment for the reduced amount without the plaintiff's consent.

---

[3]      Defendant Thompson's motion papers seek a "reduction" of the jury's punitive damages award. The Second Circuit has "le[ft] for another day the question of whether, if. . . [a] punitive award was excessive on constitutional grounds, [a court] could or would directly order a reduction in the punitive award rather than using the remittitur procedure." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 168 (2d Cir. 2014). Because Defendant Thompson does not challenge the punitive damages award on explicitly constitutional grounds and the Second Circuit has left the possibility of direct reduction of punitive damages award in doubt, the proper procedure here is remittitur.

*Id.* (quoting Moore et al., *Moore's Federal Practice* § 59.13[2][g][iii][A], p. 59-82 (3d ed. 2013)).  "Judicial review of the size of punitive damages awards has been a safeguard against excessive verdicts for as long as punitive damages have been awarded."  *Honda Motor Co. v. Oberg*, 512 U.S. 415, 421 (1994).  Although punitive damages awards "are by nature speculative, arbitrary approximations . . . . courts bear the responsibility to ensure that judgments as to punitive damages conform, insofar as reasonably practicable, to the prevailing norms of the legal system and are not excessive."  *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 209 (2d Cir. 2014) (internal citation, alterations and quotation marks omitted).  Building on the Supreme Court's analysis of the constitutional limits of a punitive damages awards in *BMW of N.A., Inc. v. Gore*, 517 U.S. 559 (1996), the Second Circuit has outlined four considerations in determining whether a punitive award is excessive: "(1) degree of reprehensibility of the defendant's conduct, (2) relationship of the punitive damages to the compensatory damages,[] (3) criminal and civil penalties imposed by the state's law for the misconduct in question,"  *Payne v. Jones*, 711 F.3d 85, 101 (2d Cir. 2013) (citing *Gore*, 517 U.S. at 574-75), and (4) a comparison to court rulings on punitive damages in other comparable cases, *id.* at 104.

The Supreme Court has explained that the "most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."  *Gore*, 517 U.S. at 575.  Although the inquiry is ultimately subjective, there are certain objective guides.  In particular, conduct marked by violence is more reprehensible than conduct that does not involve violence, *id.* at 576; "[c]onduct that involves deceit or malice is more reprehensible than conduct involving mere negligence," *Stampf*, 761 F.3d at 209; and "conduct that could cause serious physical or emotional injury is more reprehensible than conduct that risks only minor injuries or economic damages," *id.*  Here, Defendant Thompson approached with his gun drawn

11

because Plaintiff was sitting in a car with someone Defendant Thompson believed to be tangentially connected to an ongoing search on another block. He then arrested Plaintiff without probable cause and without any cognizable legal basis. Such conduct involves the threat of violence and the potential for serious injury, and accordingly amounts to reprehensible conduct. However, because Plaintiff's ultimate injuries were minor and the gun, while threatening, was never used, "the degree of reprehensibility was not all that high" and suggests that an award of $110,000 in punitive damages is excessive. *Payne*, 711 F.3d at 101.

As to the second factor, the relationship between the harm and the punitive damages award, courts typically consider whether the ratio of the compensatory damages award to the punitive damages award is excessive. *Id.* at 102. There is no "['']mathematical bright line' between constitutionally acceptable and unacceptable ratios for punitive damages." *Stampf*, 761 F.3d at 210 (quoting *Gore*, 517 U.S. at 582)   "[I]n cases of very small injury but very reprehensible conduct, the appropriate ratios can be very high." *Payne*, 711 F.3d at 102. "If in such cases significant punitive awards are not available, . . . a plaintiff will often be unable to sue as attorneys would be unable to collect a reasonable fee through a contingency arrangement." *Id.*; *see Lee v. Edwards*, 101 F.3d 805, 813 (2d Cir. 1996) (remitting $125,000 punitive damages award to $75,000 where jury awarded only $1 in nominal damages for malicious prosecution claim where police officer attacked the plaintiff and then falsely accused him of assault); *see also Payne*, 711 F.3d at 102 (noting that "huge" compensatory-to-punitive ratio of 1 to 75,000 was appropriate on "those facts" in *Lee*). Here, the ratio of compensatory to punitive damages is approximately 1 to 110. The compensable injury as determined by the jury was small and, as explained above, the reprehensibility was not very high. Accordingly, a 1-to-110 ratio is excessively high and warrants reduction.

12

Third, courts look to the maximum penalty authorized by state law for the conduct at issue.  Defendant Thompson submits that the highest possible statutory charge against him was the class A misdemeanor of unauthorized use of a vehicle in the third degree, which is "punishable by a fine of up to one thousand dollars or by a sentence to a term of imprisonment for a period of up to one year or by both such fine and imprisonment."  N.Y. Penal Law § 165.05; *see id.* ("A person is guilty of unauthorized use of a vehicle in the third degree when . . . [k]nowing that he does not have the consent of the owner, he takes, operates, exercises control over, rides in or otherwise uses a vehicle.").  While "the fact that New York does classify [Defendant Thompson's] conduct as a Class 'A' misdemeanor . . . strongly supports the impositions of some punitive award," "it tells very little about whether the particular award was excessive."  *Payne*, 711 F.3d at 104.  Further, because the crime covers only the unlawful search claim and not the unlawful detention claim, it understates the appropriateness of a punitive damages award.

The final consideration is a comparison of the present award against other rulings on punitive damages in comparable cases.  In *Payne*, the Second Circuit exhaustively surveyed its decisions regarding punitive damages awards against police officers.  It concluded that the punitive damages awards ranging from $125,000 to $175,000 have been deemed "substantial," and in cases where such substantial awards of over $100,000 were upheld, the police conduct at issue was far more egregious than here.  *Id.* at 105.

For example, in *O'Neill v. Krzeminski*, two police officers attacked a handcuffed plaintiff (one with a blackjack) and then dragged him across the floor of the police station by his throat. 839 F.2d 9, 10 (2d Cir. 1988).  The Second Circuit affirmed punitive damages of $125,000 and $60,000.  *Id.* at 13-14.  In *DiSbarro v. Hoy*, a police officer arrested one plaintiff for spurning his advances at the bar, and then, at the police station, he slammed the plaintiff into the door; another

police officer pushed another plaintiff against a wall, choked her, threw her to the ground and struck her repeatedly.  343 F.3d 172, 176-77 (2d Cir. 2003).  The Second Circuit limited punitive damages to $75,000, which it found "comparable to the upper limits of the punitive damages awarded in similar police brutality cases."  343 F.3d at 189.  In *Payne*, a police officer called to assist with a combative patient at a hospital exacerbated the situation by verbally provoking the patient into a fight, and then continuing the fight, thereby worsening the patient's already bad back and PTSD.  *Payne*, 711 F.3d at 88.  The Second Circuit concluded that "highest level of punitive damages that can properly be sustained is $100,000."  *Id.* at 106.

Based on a comparison to previous awards, the punitive damages award here is excessive.  The conduct here was far less reprehensible than each of the above cases and other cases surveyed in *Payne*, and therefore the amount of punitive damages must be reduced.  A recent case in the Eastern District of New York, *Milfort v. Prevete*, is instructive on how much the remittitur should be.  Based on an analysis of the factors articulated in *Payne*, *Milfort* reduced the punitive damages award of $40,000 to $5,000 because the jury awarded only nominal damages after finding the defendant liable for a single claim of false arrest, and "Plaintiff, though unjustly targeted and falsely arrested, was not subject to excessive force . . ., was not damaged in a way that necessitated compensatory damages, and was held in custody for the relatively short time of one and a half hours."  3 F. Supp. 3d 14, 26 (E.D.N.Y. 2014).  Similar considerations support a remittitur in this case.  However, because here the jury awarded compensatory damages (however small) and Defendant Thompson was found liable for two separate constitutional violations (as opposed to one in *Milfort*), a larger award than $5,000 is in order.

Having considered this "complex totality of factors," *Payne*, 711 F.3d at 106, the Court concludes that the highest level of punitive damages that may be sustained here is $10,000.  If

14

Plaintiff does not consent to accept a punitive damage award of $10,000, a new trial on this issue will be ordered.

### C.   Attorneys' Fees

"In any action or proceeding to enforce a provision of [section 1983], . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988(b).  In the Second Circuit, the district court's discretion is narrow and a "prevailing party" in a § 1983 case is "presumptively entitled to 'reasonable' attorney's fees under 42 U.S.C. § 1988."  *Kassim v. City of Schenectady*, 415 F.3d 246, 251 (2d Cir. 2005); *accord Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) ("Although a district court typically has wide discretion in choosing whether to deny attorneys' fees, . . . this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust.").  There is no dispute that Plaintiff is a "prevailing party" for purposes of 42 U.S.C. § 1988.

To determine the amount of attorneys' fees a party may recover, a court must calculate the "presumptively reasonable fee," previously referred to as the "lodestar."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 189-90 (2d Cir. 2007); *accord Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) ("[T]here is a strong presumption that the lodestar figure is reasonable . . . ." (internal quotation marks omitted)).  The "lodestar" is calculated by multiplying the reasonable number of hours that the case requires by the reasonable hourly rates.  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Perdue*, 559 U.S. at 542).  The movant bears the burden to submit sufficient evidence to support the hours worked and the rates claimed.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

"In determining what fee is reasonable, the court takes account of claimed hours that it views as excessive, redundant, or otherwise unnecessary" and "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (internal quotation marks omitted). "A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

In this action, Plaintiff is represented by William Martin, a founding member of the Martin & Colin, P.C. law firm. Mr. Martin graduated from law school in 1988 and was admitted to the New York State Bar and this Court in 1989. In his 26 years of experience as a litigator, Mr. Martin has served as an Assistant District Attorney in Westchester County, as a litigator in the Westchester County Attorneys' Office and as a civil rights and discrimination litigator at his own firm. During the course of his government service, Mr. Martin took approximately 50 cases to trial in state court, and in private practice he has represented many individuals in both state and federal court.

The records reflect that Mr. Martin billed his time at an hourly rate of $400 for 363.5 hours of work, and charged $150 per hour for 31.1 hours of work done by an office assistant. The total documented fees and expenses on this case total $151,920.42.[4]

Mr. Martin's hourly rate of $400 is approved as reasonable. "[C]ourts in this district have recently held that $450 per hour is within the reasonable range for experienced attorneys litigating civil rights cases in the Southern District of New York." *Muñoz v. Manhattan Club*

---

[4]    Mr. Martin's costs -- as distinct from his fees -- are approved as reasonable. Defendant Thompson does not object to the costs.

*Timeshare Ass'n, Inc.*, No. 11 Civ. 7037, 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014) (collecting cases) (internal quotation marks and alterations omitted), *aff'd on other grounds*, --- F. App'x ----, No. 14-3971, 2015 WL 3756446 (2d Cir. June 17, 2015).  In light of Mr. Martin's 26 years of substantial litigation experience, $400 is a reasonable hourly rate.  However, for the 23.9 hours in travel time (unrelated to Plaintiff's criminal case, which is addressed below), Plaintiff may recover 50% of Mr. Martin's full hourly rate.  *See LV v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010) ("Courts in this Circuit regularly reduce attorneys' fees by 50 percent for travel time.").

The assistant's hourly rate is reduced to $100.  As "there has been no showing, that the nature of the [assistant's] work in this case was unusually complex, . . . . [a]nd the caselaw reflects that paralegal [or assistant] billing rates of between $90 and $125 are more in line with the prevailing market rates in this District," a reduction is appropriate.  *Themis Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2014 WL 4379100, at *8 (S.D.N.Y. Sept. 4, 2014) (collecting cases).

Mr. Martin's hours also warrant certain reductions.  First, fees for work on Plaintiff's criminal case cannot be recovered under 42 U.S.C. § 1988.  "As a general matter, if a plaintiff prevails on a claim that generates a fee award, he may recover for work done on other claims if they were substantially related to the claim on which he prevailed."  *Tucker v. City of New York*, 704 F. Supp. 2d 347, 358 (S.D.N.Y. 2010).  However, the entirely separate criminal case was not a substantially related claim.  Accordingly, 19.9 hours for work exclusively on criminal defense are subtracted from the recoverable hours.

Second, Defendants correctly object to the amount of time Mr. Martin spent on certain tasks.  In particular, he spent 0.8 hours each drafting three individual deposition notices, and half

an hour reviewing the complaint after it had been filed on ECF.  The total hours spent on these

tasks, are halved -- reducing 2.9 hours to 1.5 hours.

Finally, a district court in all cases has "authority to reduce the fee awarded to a prevailing

plaintiff below the lodestar by reason of the plaintiff's partial or limited success."  *Kassim*, 415

F.3d at 256 (internal quotation marks omitted).  Such an overall reduction is particularly

appropriate here because, viewed against the large number of claims that ultimately were

dismissed, Plaintiff's "degree of success" in this case is at best "partial."  Accordingly, the total

lodestar amount as calculated below is subjected to an across-the-board deduction of 25%.

Defendant Thompson's objections not already addressed are rejected.  First, hours spent

on ultimately dismissed claims, including state claims that required appearances at 50-h hearings,

were "reasonably calculated to improve the prospects for his federal claims, at least by way of a

future settlement.  That finding in itself suffices to justify awarding plaintiff reasonable fees for

that effort."  *Tucker*, 704 F. Supp. at 358.  Further, while certain aspects of the case were

straightforward, the case involved novel legal questions related to the reasonableness of a search

and qualified immunity that warranted extensive research.  Accordingly, work on claims that

ultimately were dismissed or unsuccessful is not disregarded.  Instead, as stated above, an overall

discount for "partial success" applies.

 Second, to the extent that Defendant Thompson objects to the fee award as

disproportionate to the ultimate financial recovery in the case, the Second Circuit has "repeatedly

rejected the notion that a fee may be reduced merely because the fee would be disproportionate to

the financial interest at stake in the litigation."  *Barbour v. City of White Plains*, 700 F.3d 631,

635 (2d Cir. 2012).

As summarized in the table below, Plaintiff is entitled to $103,262.92 in attorneys' fees and expenses.

**Summary of Attorneys' Fee Awards**

| | Number of Hours | Hourly Rate | Total |
|---|---|---|---|
| **Requested Fees for Mr. Martin** | 363.5 | $ 400.00 | $ 145,400.00 |
| **Approved Fees for Assistant** | 31.1 | $ 100.00 | $ 3,100.00 |
| **Deduction for Criminal Case** | 19.9 | $ 400.00 | ($ 7,960.00) |
| **Deduction for Travel Time** | 23.9 | $ 200.00 | ($ 4,780.00) |
| **Deduction for Excess Hours** | 1.4 | $ 400.00 | ($ 560.00) |
| **SUBTOTAL** | | | $ 135,210.00 |
| **25% Discount for "Partial Success"** | | | ($ 33,802.50) |
| **Costs** | | | $ 1,855.42 |
| **TOTAL** | | | **$ 103,262.92** |

### III.    CONCLUSION

For the foregoing reasons, Defendant Thompson's motion for judgment as a matter of law pursuant to Rules 50 and 59 is DENIED.  Defendant Thompson's motion, in the alternative, for a remittitur of the punitive damages award is GRANTED.  Plaintiff's application for attorneys' fees is GRANTED in part.

No later than August 18, 2015, Plaintiff shall inform the Court if he consents to a reduced punitive damages award of $10,000.  If he does not, a schedule for trial on the matter will follow.

The Clerk of the Court is directed to close the motions at Dkt. Nos. 77 and 80.

SO ORDERED.

Dated: August 11, 2015
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

20